UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHNNY D. BANKS, | CASE NO. C15-0304JLR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| SOCIETY OF ST. VINCENT DE PAUL, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the court on Defendants Society of St. Vincent DePaul Seattle/King County ("St. Vincent"), Steve Knipp, and Lori Bedwell's[1] (collectively, "Defendants") motion seeking summary judgment on all of Plaintiff Johnny Banks'

---

[1] King County is listed on ECF as a fourth defendant, but Mr. Banks' complaint lists only St. Vincent, Mr. Knipp, and Ms. Bedwell as defendants. (*See* Dkt.; Compl. (Dkt. # 1) at 1, ¶¶ 4-6.) The court therefore takes the ECF reference to King County to be a mere error in data entry and DIRECTS the Clerk to remove it from the ECF system.

ORDER- 1

claims. (*See* Mot. (Dkt. # 12); *see also* Reply (Dkt. # 17).) Mr. Banks opposes that motion. (*See* Resp. (Dkt. # 16).) Having considered the submissions of the parties, the balance of the record, and the relevant law,[2] the court GRANTS Defendants' motion for summary judgment.

## II. BACKGROUND

This lawsuit arises out of Mr. Banks' employment with St. Vincent. (*See generally* Compl.) St. Vincent hired Mr. Banks to a temporary position on December 7, 2012, and transferred him to a full-time position as a trucking assistant on March 25, 2013. (*See* Knipp Decl. (Dkt. # 13) ¶ 2.) He worked for St. Vincent until March 21, 2014, when he was terminated for refusal to perform his job duties. (*See id.* ¶ 9, Ex. 7 ("Term. Not.") at 1.) He alleges St. Vincent's workplace environment and his termination violated federal labor law and state tort law. (*See* Compl. ¶¶ 36-54.) He also sues Steve Knipp, St. Vincent's director of human resources, and Lori Bedwell, a manager at St. Vincent, for their roles in his employment and termination. (*See id.* ¶¶ 4-5.)

On several occasions during his employment, Mr. Banks received notice of deficient performance. First, Mr. Banks received a disciplinary notice on August 2, 2013, which cited him for giving false information to management regarding unauthorized stops on his truck routes in June, July, and August 2013. (*See* Knipp Decl. ¶ 3, Ex. 1 ("8/2/13 Disc. Not.") at 1.) The notice informed Mr. Banks that this behavior violated

---

[2] The parties do not request oral argument and the court finds it unnecessary for the disposition of these motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

Section 6.1 of the employee handbook, which deals with personal conduct.  (*See id.*)  Next, Mr. Banks received an evaluation in November 2013, which indicated that his job performance fell between "needs improvement" and "satisfactory."  (*See* Knipp Decl. ¶ 4, Ex. 2 ("Perf. Eval.") at 4.)  Mr. Banks also received only a "modest" raise of $0.20 per hour. (Knipp Decl. ¶ 4; *see also* Perf. Eval. at 4.)  However, because Mr. Banks "had missed a lot of work due to injuries" during the period covered in the November 2013 evaluation, St. Vincent informed him it would do another review and consider a further pay raise in March 2014.  (*See* Perf. Eval. at 4.)

On December 9, 2013, Mr. Banks injured his back at work, for which St. Vincent offered and Mr. Banks accepted leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*.  (*See* Knipp Decl. ¶ 5.)  Mr. Banks' FMLA leave extended until March 6, 2014 (*see id.* ¶ 5, Ex. 3 ("FMLA Letter") at 1, 3), at which point he accepted a light duty custodial position with St. Vincent (*see id.* ¶ 6, Ex. 4 ("Job Descr.") at 1).  One of the associated duties was "campus-wide custodial service as scheduled.  This include[d], but [sic] not limited to, . . . cleaning floors in main areas and restrooms."  (Job Descr. at 1.)  Mr. Banks performed that job but "refused to clean site restrooms with chemicals," which St. Vincent accommodated by "purchasing organic cleaning chemicals."  (Knipp Decl. ¶ 8a[3], Ex. 6 ("3/20/14 Emails") at 2.)

On approximately March 19, 2014, Mr. Banks brought a note from his doctor indicating that he "was to avoid contact with cleaning agents," including the organic ones

---

[3] Because there are two paragraphs numbered 8 in Mr. Knipp's declaration, the court has labeled the first 8a and the second 8b.  (*See* Knipp Decl. at 3.)

1   that St. Vincent had purchased. (Knipp Decl. ¶ 7.) Ms. Bedwell and Ben Johnston, Mr.

2   Banks' supervisor, met with Mr. Banks on March 20, 2014, regarding the doctor's note.

3   (*See id.* ¶ 7, Ex. 5 ("Meeting Summs.") at 1.) Although Mr. Johnston offered to

4   accommodate Mr. Banks' sensitivity by allowing him to clean the bathroom using only

5   warm water, Mr. Banks initially refused to clean the bathroom, insisting instead that he

6   would only stock the bathroom with paper products. (*See* Meeting Summs. at 1, 3.) Mr.

7   Johnston and Mr. Banks also clashed over whether Mr. Banks would wear his uniform

8   and what parts of the facility Mr. Banks was to access during work. (*See id.*) At the

9   conclusion of the meeting, Mr. Banks pointed at Ms. Bedwell and accused her of being a

10  racist, "pulled the door open very hard," and proceeded to create a scene in the hallways.

11  (*Id.*) Throughout the meeting and its aftermath, he repeatedly accused Ms. Bedwell and

12  Mr. Johnston of being racially biased. (*See id.*) After confirming that Mr. Banks would

13  not do his job that day, Mr. Johnston sent Mr. Banks home for the day with pay. (*Id.*)

14          On the afternoon of March 20, 2014, following the meeting with Mr. Banks, Mr.

15  Johnston emailed Mr. Banks. (*See* Knipp Decl. ¶ 8a; 3/20/14 Emails at 1-2.) Mr.

16  Johnston's email confirmed that Mr. Banks' job was still available but only if he

17  performed all of the tasks listed in the job description. (*See id.*) The letter warned Mr.

18  Banks that "if you show up and fail to complete all your assigned tasks, it will lead to

19  your immediate termination." (*Id.*) Mr. Banks responded on the evening of March 20,

20  2014, confirming his intent to continue his employment with St. Vincent. (*See id.* at 1.)

21  The next day, Mr. Banks reported to work and cleaned the restroom using only water, but

22  he refused to do so going forward. (*See* 7/17/15 Goldstein Decl. (Dkt. # 14) ¶ 3, Ex. 1

ORDER- 4

1  ("Banks Dep.") at 93:11-13; Term. Not. at 1.)  Mr. Banks also reported to Mr. Johnston
2  and other employees potential violations of the Occupational Safety and Health Act
3  ("OSHA"), 29 U.S.C. § 651 *et seq.*, based on the conditions of his employment.  (*See*
4  Banks Dep. at 42:2-22, 64:1-25; Johnston Decl. (Dkt. # 15) ¶ 8; Knipp Decl ¶ 8b.)  Mr.
5  Banks based this assertion on his conversation with the Occupational Safety and Health
6  Administration and/or Washington's Environmental Health and Safety Board, which
7  confirmed that cleaning restrooms with only warm water is unsanitary.  (*See* Banks Dep.
8  at 91:1-93:13.)  He relayed this concern to Mr. Johnston and Mr. Knipp on March 21,
9  2014, although Mr. Knipp and Mr. Johnston refute that Mr. Banks' message indicated
10 cleaning a bathroom with warm water was an OSHA violation.  (*See id.* at 93:5-13;
11 Knipp Decl. ¶ 10; Johnston Decl. ¶ 10.)
12         When Mr. Banks refused to do his job going forward, Mr. Knipp, acting on behalf
13 of St. Vincent, terminated Mr. Banks for violating Section 6.1 of the employee handbook.
14 (*See* Knipp Decl ¶ 9; Term Not. at 3; 8/2/13 Disc. Not. at 1.)  Section 6.1 provides that
15 "employees are expected to conduct themselves professionally and behave in a manner
16 that is conducive to the efficient operation of" St. Vincent.  (Term. Not. at 3.)  Section 6.1
17 lists as specific examples of inappropriate behavior "[s]houting, raising voice at a co-
18 worker or customer in public and/or in private," and "[i]nsubordination (e.g., refusing to
19 follow management's instructions concerning a job-related matter) or encouraging others
20 to engage in insubordination."  (*Id.*)
21         Mr. Banks filed this lawsuit as a *pro se* plaintiff against St. Vincent, Mr. Knipp,
22 and Ms. Bedwell.  (*See* Compl. at 1.)  He divides his claims into five counts: Count I

alleges violations of OSHA and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* (*see id.* ¶¶ 36-43a);[4] Count II alleges "vicarious liability" (*id.* ¶¶ 43b-44); Count III alleges infliction of emotional distress (*see id.* ¶¶ 45-46); Count IV alleges negligence/gross negligence (*see id.* ¶¶ 47-51); and Count V alleges outrage (*see id.* ¶¶ 52-54). Defendants seek summary judgment on all five counts. (*See generally* Mot.)

### III.  ANALYSIS

**A.  Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323.

If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The non-moving party may do this by use of affidavits (or declarations), including his or her own, depositions, answers to interrogatories or requests for admissions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[4] Because there are two paragraphs numbered 43 in Mr. Banks' complaint, the court has labeled the first 43a and the second 43b. (*See* Compl. at 6.)

242, 248 (1986).  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Only disputes over the facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.  As framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Mr. Banks, proceeding *pro se,* failed to submit any sworn evidence in opposition to Defendants' motion for summary judgment.[5]  (*See generally* Resp.)  "The summary judgment rules apply with equal force to *pro se* litigants because they 'must follow the same rules of procedure that govern other litigants.'"  *Schwartz v. World Savings Bank*, No. C11-0631JLR, 2012 WL 993295, at *3 (W.D. Wash. Mar. 23, 2012) (quoting *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1995)).  This standard comes from the Ninth Circuit's determination that "*pro se* litigants in the ordinary civil case should not be treated more

---

[5] Mr. Banks also failed to comply with the Local Rules, which require opposition papers served by mail to "be mailed not later than the Friday preceding the noting date."  Local Rules W.D. Wash. LCR 7(d)(3).  The motion noted on Friday, August 14, 2015. (*See* Mot. at 1.)  Because Mr. Banks served his response by mail, he was to mail his opposition papers by Friday, August 7, 2015.  *See* Local Rules W.D. Wash. LCR 7(d)(3).  He instead mailed the response on Monday, August 10, 2015, and Defendants' counsel received it on Wednesday, August 12, 2015.  (*See* 8/13/15 Goldstein Decl. (Dkt. # 17-1) ¶¶ 2-3, Ex. 1 at 1.)  Accordingly, Defendants argue that Mr. Banks' response should not be considered.  (*See* Reply at 1-2.)  Because Defendants nonetheless filed their reply on August 13, 2014, a day before it was due to the court, *see* Local Rules W.D. Wash. LCR 7(d)(3), the court concludes Defendants have suffered minimal prejudice from Mr. Banks' tardy response.  The court accordingly considers the substance of Mr. Banks' response herein.

favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1365 (9th Cir. 1986) (concluding that *pro se* parties are not entitled to notice from the court of Rule 56's evidentiary standards). The Ninth Circuit has cautioned, however, that "a nonmoving party's failure to comply with the local rules does not excuse the moving party's duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003); *see also* Local Rules W.D. Wash. LCR 7(b)(2) ("*Except for motions for summary judgment*, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." (emphasis added)). Thus, heeding this court's local rules and the requirements of *Martinez,* the court will analyze Defendants' motion for summary judgment on the merits. "However, where a defendant has met its burden of demonstrating an absence of material factual issues for trial, the court cannot create an issue for a plaintiff who has not submitted any countervailing evidence." *See Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *3 (W.D. Wash. Aug. 20, 2014).

### B.   Count I:  OSHA and FLSA Retaliation Claims

#### 1.   OSHA Violation

Mr. Banks first alleges that St. Vincent violated OSHA's requirement that each employer provide each of its employees "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm" to employees. 29 U.S.C. § 654(a)(1); (*see also* Compl. ¶¶ 37-38.) Defendants have put on sufficient evidence to demonstrate that no such hazard existed.

Mr. Banks acknowledged in his deposition that upon informing St. Vincent of his sensitivity to chemical cleaners—including the organic cleaners that St. Vincent purchased in an attempt to accommodate Mr. Banks—Mr. Johnston told Mr. Banks that he could instead use warm water to clean the restroom.  (*See* Banks Dep. at 42:19-20; Knipp Decl. ¶ 7; Johnston Decl. ¶¶ 4-5.)  Mr. Banks has presented no evidence, nor is it reasonable to infer, that cleaning a bathroom with warm water is "likely to cause death or serious harm" to him or any other employee.  *See* 29 U.S.C. § 654(a)(1).  The court accordingly grants summary judgment on Mr. Banks' OSHA claim.

2.  FLSA Retaliation Claims

Mr. Banks also alleges that Defendants retaliated against him in violation of several sections of the FLSA.  Although his complaint is not clear on this issue, the court construes the complaint to allege three such violations:  (1) Defendants violated Section 215(a)(3) by terminating Mr. Banks for filing an OSHA report against St. Vincent (*see* Compl. ¶¶ 40, 42-43a); (2) St. Vincent violated Section 218c(a)(2) by terminating him for filing an OSHA complaint (*see* Compl. ¶ 41); and (3) Defendants violated Section 218c(a)(5) by retaliating against Mr. Banks for refusing to participate in behavior that he reasonably believed violated provisions of Title 29 of the United States Code (*see* Compl. ¶¶ 39, 42-43).  To reiterate, Mr. Banks has put on no evidence of any of these violations, so the court has only the evidence presented by Defendants to use in evaluating those claims.  (*See generally* Resp.; Dkt.)

//

//

*a. Claim Under Section 215(a)(3)*

Mr. Banks' first statutory retaliation claim alleges Defendants violated Section 215(a)(3) by firing him for filing a report with the Occupational Safety and Health Administration. *See* 29 U.S.C. § 215(a)(3); (Compl. ¶¶ 40, 42-43.) Defendants have submitted substantial evidence that the reason for firing Mr. Banks was his failure to perform his job duties. (*See, e.g.*, Knipp Decl. ¶ 13.) Mr. Banks first violated the terms of the employee handbook when he misreported the stops that his driver made on his route. (*See* 8/2/13 Disc. Not. at 1.) He then attended a meeting with Ms. Bedwell in which he raised his voice, pointed at her, slammed the door, and proceeded to confront colleagues in the office. (*See* Meeting Summs. at 1-3.) Nonetheless, St. Vincent offered to retain Mr. Banks as an employee so long as he completed all of his job duties. (*See* 3/20/14 Emails at 2.) Mr. Banks showed up to work the following day and completed his tasks, but he informed Mr. Johnston that he would not clean restrooms (*see* Johnston Decl. ¶ 8), one of the basic duties listed in his job description (*see* Job Descr. at 1). All of these actions violated Section 6.1 of Mr. Banks' employee handbook, which deals with personal conduct, and accordingly St. Vincent terminated Mr. Banks. (*See* Term. Not. at 1.)

In response to St. Vincent's evidence that it fired Mr. Banks for legitimate, non-retaliatory reasons, Mr. Banks merely restates his complaint and cites to Supreme Court precedent that indicates oral complaints are protected conduct. (*See* Resp. at 2-3 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, ---, 131 S. Ct. 1325, 1331 (2011)).) Although Mr. Banks submitted no evidence, in the portion of his

deposition transcript submitted by Defendants he attests that he filed an oral complaint with the Occupational Safety and Health Administration. (*See* Banks Dep. at 91:1-19.) However, Mr. Banks admitted that he did not inform Mr. Johnston, his supervisor, about that complaint. (*See id.* at 95:21-23.) Furthermore, Mr. Knipp and Mr. Johnston attest that they were unaware of the OSHA complaint when St. Vincent terminated Mr. Banks. (*See* Knipp Decl. ¶ 14; Johnston Decl. ¶ 12.) In other words, there is substantial evidence before the court of a legitimate reason for firing Mr. Banks and no evidence that any St. Vincent employee even *knew* about Mr. Banks' oral complaint to the Occupational Safety and Health Administration.[6] The court therefore concludes that summary judgment is warranted as to Mr. Banks' claim under 29 U.S.C. § 215(a)(3).

      b. *Claims Under Sections 218c(a)(2) and 218c(a)(5)*

Mr. Banks also alleges that Defendants violated the FLSA by firing him for submitting an OSHA complaint, *see* 29 U.S.C. § 218c(a)(2), and for refusing to clean the bathrooms in a manner that he felt violated OSHA, *see* 29 U.S.C. § 218c(a)(5). Section 218c(a)(2) provides that

> [n]o employer shall discharge . . . any employee . . . because the employee . . . provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any

---

[6] Mr. Banks also alleges that Ms. Bedwell's August 2, 2013, disciplinary notice to Mr. Banks was motivated by discrimination or retaliation. (*See* Compl. ¶ 42, Banks Dep. at 89:10-13.) There is no evidence in the record of any such motive that Ms. Bedwell had at that time. (*See generally* Compl.) Indeed, Mr. Banks did not have a confrontation with Ms. Bedwell, file an OSHA notice, and refuse to perform his job duties until seven months later, in March 2014. (*See* Meeting Summs. at 1-3; Knipp Decl. ¶¶ 6-9.) Accordingly, the court also rejects this theory.

ORDER- 11

act or omission the employee reasonably believes to be a violation of, any provision of *this title*.

29 U.S.C. § 218c(a)(2) (emphasis added).  Section 218c(a)(5) provides that

[n]o employer shall discharge . . . any employee . . . because the employee . . . objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee . . . reasonably believed to be in violation of any provision of *this title* . . . , or any order, rule, regulation, standard, or ban under *this title* . . . .

*Id.* § 218c(a)(5) (emphasis added).  Mr. Banks implicitly interprets the references to "this title" in Section 218c(a) to refer to Title 29 of the United States Code.  (*See* Compl. ¶¶ 39, 41-43.)  Under that understandable interpretation, firing an employee for submitting an OSHA complaint would violate Section 218c(a)(2), and firing an employee for refusing to participate in an activity that the employee reasonably believed violated OSHA—such as cleaning restrooms with only warm water—would violate Section 218c(a)(5).

However, the better understanding of Section 218c(a)'s references to "this title" is as referring to Title I of the Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, 124 Stat. 119.[7]  *See Rosenfield v. GlobalTranz Enters., Inc.*, No. CV 11-02327-PHX-NVW, 2012 WL 2572984, at *1-4 (D. Ariz. July 2, 2012) (performing extensive analysis of the PPACA's legislative history and incorporation into the United States Code, and concluding that "this title" in Section 218c(a) refers to Title I of the PPACA).  First of all, the "References in Text" note, which accompanies Section

---

[7] Title 29, Section 218c of the United States Code codifies Title I, Section 1558 of the PPACA, which was signed into law on March 23, 2010.  *See* Patient Protection and Affordable Care Act, Pub L. No. 89-670, § 1558, 124 Stat. 119 (2010).

218c in the United State Code, states that "[t]his title, referred to in subsec. (a)(2), (5), probably means title I of" the PPACA. *See* 29 U.S.C. § 218c. Furthermore, reading "this title" to refer to Title 29 of the United States Code would render Title I of the PPACA—which is largely codified in Titles 42 and 26 of the United States Code, not Title 29—without an anti-retaliation provision. *See Rosenfield*, 2012 WL 2572984, at *1-2. This would mean that "a whistleblower could be fired with impunity as far as the [PPACA] is concerned—surely an incongruous result given the comprehensive reforms Congress intended and its many protections against discrimination." *Id.* Finally, reading Section 218c to apply to Title 29 at large would swallow the narrower anti-retaliation protections afforded by Section 215, which have been in place since 1938. *See* 29 U.S.C. § 215(a)(3) (making it unlawful to discharge or discriminate against an employee for filing a complaint or participating in a proceeding under the FLSA); *Rosenfield*, 2012 WL 2572984, at *3. "Enacting such changes in a new statutory section—as opposed to amending § 215—makes little sense, especially without mentioning how the new remedy might relate to the preexisting remedy."[8] *Rosenfield*, 2012 WL 2572984, at *4.

The court therefore concludes that "this title" in Sections 218c(a)(2) and 218c(a)(5) refers to Title I of the PPACA. There is no evidence in the record that Mr.

---

[8] Although several district courts have treated Section 218c(a)'s references to "this title" as pointing to Title 29 of the United States Code, they have done so only in passing. *See Wiley v. Asplundh Tree Expert Co.*, 4 F. Supp. 3d 840, 849-50 (S.D. W. Va. 2014) (treating Section 218c as "the anti-retaliation provision of the FLSA" with citation to a case that addressed Section 215(a)(3)'s anti-retaliation provision); *Falk v. City of Glendale*, No. 12-cv-00925, 2012 WL 2390556, at *5 n.11 (D. Colo. June 25, 2012) (citing to Section 218c in a one-sentence footnote questioning whether a FLSA retaliation claim is appropriate in the case).

Banks provided information regarding a violation of Title I of the PPACA. *See* 29 U.S.C. § 218c(a)(2). There is likewise no evidence that he was fired for objecting to a task that he reasonably believed violated Title I of the PPACA. *See id.* § 218c(a)(5). Accordingly, the court grants Defendants summary judgment as to Mr. Banks' claims for violating Section 218c(a).[9]

**C.     Count II:  Vicarious Liability**

Mr. Banks asserts as a separate claim vicarious liability. (*See* Compl. ¶¶ 43b-44.) Vicarious liability is not a cause of action; rather, it is a legal theory that "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Grp. Home*, 929 P.2d 420, 425-26 (Wash. 1997). Because Count II does not state a legitimate legal theory for relief, the court grants summary judgment to Defendants on the claim. However, because Mr. Banks is proceeding *pro se*, the court liberally construes Mr. Banks' vicarious liability allegations as applying to Counts III, IV, and V, all of which allege common law torts. *See Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008). In other words, the court takes Mr. Banks' complaint to allege under Counts III, IV, and V that St. Vincent is liable for torts committed by its employees in the scope of their employment.

//

//

---

[9] The parties reasonably dispute whether Mr. Banks exhausted his administrative remedies as to Count I. (*See* Mot. at 6; Resp. at 3-4 (discussing Mr. Banks' oral complaint); Reply at 4.) Because the court resolves Count I on the merits, it expresses no opinion as to Defendants' argument that Mr. Banks failed to exhaust his administrative remedies.

### D. Count IV: Negligence and Gross Negligence

Mr. Banks also states claims for negligence and gross negligence. (*See* Compl. ¶¶ 47-51.) As Defendants point out, it is unclear from the complaint whether Mr. Banks asserts these claims under a statute or the common law. (*See* Mot. at 8.) Because the court is unaware of any statute that would impose negligence liability on Defendants, the court takes Mr. Banks' complaint to allege liability based on common law principles of negligence. *See Mina v. Boise Cascade Corp.*, 710 P.2d 184, 190-91 (Wash. 1985) ("In the absence of a statutory standard, the jury is to measure a party's liability by the common law principles of negligence."). "The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog v. City of Seattle*, 979 P.2d 400, 406 (Wash. 1999). Gross negligence is "negligence substantially and appreciably greater than ordinary negligence." *Nist v. Tudor*, 407 P.2d 798, 803 (Wash. 1965).

Defendants have put on evidence that at each step in their dealings with Mr. Banks, their employees—including Mr. Knipp and Ms. Bedwell—exercised reasonable care. The court discussed much of that evidence in granting summary judgment as to Count I and will not fully recount it here. *See supra* Part III.B. As Mr. Banks admits, Defendants promptly accommodated all of Mr. Banks' documented needs as an employee. (*See* Banks Dep. at 42:5-24.) Mr. Banks has put forth no evidence to demonstrate that these accommodations or any behavior that led to his termination was unreasonable. (*See generally* Resp.) Furthermore, the only apparent damage before the court is Mr. Banks' termination (*see* Term. Not. at 1), and he was given several

reasonable warnings and opportunities to avoid that termination (*see* 3/20/14 Emails at 2). Accordingly, the court concludes as a matter of law that Defendants were neither negligent nor grossly negligent and grants Defendants summary judgment on those claims.

**E.     Counts III and V:  Infliction of Emotional Distress and Outrage**

Mr. Banks also alleges that St. Vincent committed the torts of negligent infliction of emotional distress, intentional infliction of emotional distress, and outrage.[10] Mr. Banks has put on no evidence whatsoever of emotional distress, a common element to these torts.  (*See* Resp.); *Hegel v. McMahon*, 960 P.2d 424, 430 (Wash. 1998); *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003).  Furthermore, as discussed above, Defendants have put on significant evidence that the accommodations provided to Mr. Banks were reasonable, and he has failed to rebut this evidence.  *See supra* Parts III.B., III.D.

As specific to Mr. Banks' claims for intentional infliction of emotional distress and outrage, there is certainly no evidence in the record of Defendants' intent or recklessness in causing Mr. Banks' alleged emotional distress.  Moreover, reasonable minds could not conclude that requiring Mr. Banks to clean bathrooms with warm water, or firing him after repeated warnings, was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo v. N.W. Tr. Servs., Inc.*, 355 P.3d 1100, 1110 (Wash. 2015) (internal quotations omitted).

---

[10] In Washington, outrage is merely another name for intentional infliction of emotional distress.  *See Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987).

1 | The court therefore concludes that Defendants are entitled to summary judgment
2 | on Mr. Banks' claims for negligent and intentional infliction of emotional distress, as
3 | well as outrage.  *See supra* Note 10.

### IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment (Dkt. # 12) and DISMISSES WITH PREJUDICE all of Mr. Banks' claims against Defendants.  The court DIRECTS the Clerk to remove from ECF the erroneously listed defendant County of King, *see supra* Note 1, and close the action.

Dated this 28th day of October, 2015.

_____

JAMES L. ROBART
United States District Judge